**Ronald J. HARDING, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 83SC181.**

Supreme Court of Colorado, En Banc.

Nov. 12, 1985.

Rehearing Denied Dec. 2, 1985.

Bluestein, Simon & Schulman, Lawrence J. Schulman, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Nathan B. Coats, Deputy Atty. Gen., William J. Higgins, David R. Little, Asst. Attys. Gen., Denver, for respondent.

ERICKSON, Justice.

The petitioner, Ronald Harding, was convicted of second-degree murder. During his trial in Denver District Court, Harding filed motions seeking "judicial immunity" from prosecution for a potential defense witness or alternatively to admit a hearsay statement made by that witness. The district court refused to grant immunity to the witness and did not admit the hearsay statement. The Colorado Court of Appeals affirmed the conviction. We granted certiorari to review the immunity and hearsay rulings. We affirm on the immunity issue and dismiss certiorari as improvidently granted on the hearsay issue.

## I.

### The Facts

On October 19, 1979, police officers were summoned to a Denver apartment building after a body was discovered in a hallway. The victim's throat had been cut, and a trail of blood led from the body to an apartment shared by Harding and Fayann White. A large amount of blood was found on the walls, door, and floor of the apartment, and several blood-soaked items were found in the apartment. Steak knives were found in the kitchen sink. Harding and White were sleeping in the apartment when police entered, and both had blood on their clothing. All of the blood in the apartment and on the clothing of Harding and White was determined to be human blood consistent with the blood type of the victim. Bloody handprints in the hallway near the body were found to be those of Fayann White.

The coroner's pathologist determined that the cause of death was a stab wound to the throat, which severed a major artery to the brain. The pathologist also found that the victim's blood alcohol level was in the near-fatal range.

The night of October 18, residents in nearby apartments saw the victim enter

the building with Harding and White (all three were intoxicated and loud) and accompany them to their apartment. Neighbors heard arguments and struggling from the Harding apartment during the night, but the noises stopped after the neighbors heard the Harding apartment door open. Several witnesses testified that Harding told waiting reporters "I did it" on his way to a police car:

Both Harding and White were originally jointly charged with second-degree murder and also under the Colorado violent crime sentencing statute, section 16–11–309, 8 C.R.S. (1978 & 1984 Supp.). Harding's case was severed from White's, and the charges against White were dismissed without prejudice by the district attorney on the first day of her trial. Harding's trial began after White's, and during his case-in-chief, Harding called White as a defense witness. White invoked her fifth amendment privilege against self-incrimination and refused to testify. Harding filed a motion to obtain immunity from prosecution for White. The district court denied the motion.

The jury convicted Harding of second-degree murder, and the district court sentenced him to ten years in the Department of Corrections. The court of appeals affirmed the conviction and sentence in *People v. Harding*, 671 P.2d 975 (Colo.App. 1983).

## II.

### Exculpatory Evidence

Harding claims that the district court's refusal to immunize Fayann White, an essential defense witness, from prosecution denied petitioner the opportunity to present an effective defense.

The Colorado statutes specifically vest the prosecution with the authority to apply to the court for witness immunity. § 13–90–118, 6 C.R.S. (1973 & 1984 Supp.). While the issue was raised in at least two Colorado cases, no Colorado court has held that a court has inherent authority to grant witness immunity in the absence of a request from the prosecution. *See People v. Guyton*, 44 Colo.App. 548, 620 P.2d 50 (1980) (even if inherent court "immunity power" exists in Colorado, it is improper to grant immunity when the witness is a potential target of prosecution for the offense with which the defendant is charged); *People v. Macias*, 44 Colo.App. 203, 616 P.2d 150 (1980) ("court immunity," if it exists in Colorado, must be raised at trial before it can be argued on appeal).

### Virgin Islands v. Smith

Harding relies chiefly on the Third Circuit case *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3rd Cir.1980), to support his motion for court-granted immunity. The Denver District Court applied the test set forth in *Smith* in ruling that White should not receive court immunity. The court of appeals affirmed Harding's conviction and analyzed *Smith* in resolving the judicial-immunity issue. Accordingly, it is necessary for us to review the court-granted immunity issue as it was set forth in *Smith*.

The Third Circuit in *Virgin Islands v. Smith* recognized an inherent authority in the court to grant witness immunity. Four defendants were tried on robbery charges. During the trial, three of the four sought to introduce the testimony of a witness who had previously made a statement to police officers inculpating himself and incriminating Smith, the fourth defendant. The witness declined to repeat the statement when called by the defense, invoking his fifth amendment privilege. The trial court denied admission of the prior hearsay statement. The defendants then sought witness immunity. In *Smith*, the witness was subject to the exclusive jurisdiction of juvenile authorities in the Virgin Islands Attorney General's office. The attorney general earlier had agreed to grant the witness "use immunity" on condition (prompted by professional courtesy) that

the United States Attorney consent. For unexplained reasons, the United States Attorney never consented. The witness' potentially exculpatory evidence was never presented to the jury, and all four defendants were convicted. They appealed, claiming that their due process rights were violated by the failure to grant immunity to the witness.

The Third Circuit remanded the case to the district court for a hearing on the immunity issue, holding that a court has inherent authority to order the prosecution to grant statutory immunity when the defendant can clearly show that the prosecution's decision to not give immunity was made with deliberate intent to distort the fact-finding process. The court found that there was evidence that the prosecution's refusal to grant immunity was intimately involved with their strategy for prosecuting the defendants' case and that they intended to keep highly relevant, possibly exculpatory evidence from the jury. The court of appeals directed that if the district court found prosecutorial abuse, a judgment of acquittal should be entered for the three affected defendants unless the prosecution granted statutory use immunity to the witness.

The Third Circuit went on to find that courts have inherent authority to grant a second form of immunity when the defendant is prevented from exercising his due process right to present evidence that is crucial to his case. The second form of immunity is court decreed and entirely separate from statutory immunity requested by the prosecution. The court found that because the judicial immunity remedy uniquely involves considerations of separation of powers, immunity grants must be made only under certain conditions: "[I]mmunity must be properly sought in the district court; the defense witness must be available to testify; the proffered testimony must be clearly exculpatory; the testimony must be essential; and there must be no strong governmental interests

which countervail against a grant of immunity." *Id.* at 972. The Third Circuit determined that findings on these issues must be made by the district court in the first instance.

The trial court applied the *Smith* test to Harding's motion to have the court immunize Fayann White. The court found that *People v. Guyton*, 44 Colo.App. 548, 620 P.2d 50 (1980), sets forth a "strong governmental interest" sufficient to outweigh the need for witness immunity (the fifth part of the *Smith* test was not met). The strong governmental interest outlined in *Guyton* is the need to prevent perjury when the immunized witness is threatened with prosecution for the same crime with which the defendant is charged. The court found that Fayann White's status was similar to that of the witness in *Guyton*, and immunity of the *Smith* type should not be given. The record also indicates that White's testimony was not clearly exculpatory to Harding under the *Smith* test.

In considering the issue, we note that most federal circuits have rejected court-granted immunity of the *Smith* type. *See United States v. Turkish*, 623 F.2d 769 (2nd Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *In re Kilgo*, 484 F.2d 1215 (4th Cir.1973); *United States v. Thevis*, 665 F.2d 616 (5th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982); *United States v. Lenz*, 616 F.2d 960 (6th Cir.), *cert. denied*, 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *United States v. Frans*, 697 F.2d 188 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983); *United States v. Hunter*, 672 F.2d 815 (10th Cir.1982); *United States v. Carlin*, 698 F.2d 1133 (11th Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983); *United States v. Heldt*, 668 F.2d 1238 (D.C. Cir.1981).

The courts rejecting *Smith* have set forth three major policies disfavoring court-granted immunity. Some courts have found that court-granted immunity is

an invasion of the normal function of the executive branch to weigh competing public interests in determining whether a particular criminal suspect should be prosecuted. *United States v. Turkish*, 623 F.2d 769, 776 (2nd Cir.1980). *See also People v. Fletcher*, 193 Colo. 314, 566 P.2d 345 (1977). Such a "social utility" analysis necessarily propels a court into uncharted waters.

Court-granted use immunity also involves significant costs to the truth-finding process. A trial judge would have to examine the circumstances surrounding the government's investigation of the case and assess possible harm to the public interest caused by a grant of immunity. "Such collateral inquires would necessitate a significant expenditure of judicial energy, possibly to the detriment of the judicial process overall, and would risk jeopardizing the impartiality and objectivity of the judge at trial." *United States v. Thevis*, 665 F.2d 616, 640 (5th Cir.1982).

Grants of immunity by the court are inherently subject to abuse by co-defendants, co-conspirators, and friends of the defendant. *Id.* An "immunity bath" may result when suspects receive immunity and falsely exonerate their cohorts. Granting immunity to Fayann White in the present case would amount to a license to commit perjury since she would no longer be threatened with prosecution for the same crime with which Harding is charged.

■ The district court properly denied Harding's motion for the court to immunize Fayann White. We reject the reasoning and holding of the *Smith* case as contrary to the great weight of authority. The only immunity available to Harding's witnesses was under section 13–90–118, 6 C.R.S. (1973 & 1984 Supp.), which could only have been granted by court order on the request of the prosecution.

■ Nothing in the record would indicate that the truth-finding process was deflected by the failure to grant immunity to Fayann White. The recorded statement of Fayann White is not inculpatory and does not exculpate the defendant. She said that the victim tried to molest her and that she was hallucinating and thought the victim was the devil. She was admittedly highly intoxicated and could not remember anything more about the homicide. The testimony was not essential to Harding's defense. All charges against White were dismissed prior to Harding's trial. Nothing in this case points to a denial of either fundamental fairness or due process. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *United States v. Herman*, 589 F.2d 1191 (3rd Cir.1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979).

Accordingly, the judgment of the court of appeals is affirmed in part, and certiorari is dismissed in part as improvidently granted.

NEIGHBORS, J., specially concurs.

QUINN, C.J., joins in the special concurrence.

KIRSHBAUM, J., does not participate.

NEIGHBORS, Justice, specially concurring:

I concur in the judgment of the court. However, I write separately to express my concern that the court's opinion may create more problems than it solves. As I read the majority opinion, the court rejects both the reasoning and the holding of *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980). However, the court implies that, under some circumstances, due process and fundamental fairness may require that a court fashion appropriate remedies, including dismissal of charges, to protect a defendant's constitutional rights.

If dismissal is an appropriate remedy, I fail to see why the lesser available alternative of judicial immunity should not also be available to a trial judge in certain unique circumstances.

In my view, we need not reach the validity of *Smith* in this case. The majority concedes that at least two prongs of the *Smith* test are not met: The proffered testimony did not clearly exculpate the defendant and it was not essential to the defense. The preferable resolution of the *Smith* issue in this case is simply to affirm the court of appeals' decision upholding the trial court's ruling and hold that a grant of immunity by the court at the request of a defendant to a witness is inappropriate where that witness is a potential target of prosecution for the crime with which the defendant stands charged. *People v. Guyton,* 44 Colo.App. 548, 620 P.2d 50 (1980).

Accordingly, I would leave consideration of the *Smith* issue and the formulation of appropriate remedies for due process violations for another day.

I am authorized to say that Chief Justice QUINN joins me in this special concurrence.