The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Walter C. EGGERT, Defendant–Appellant.

No. 93CA1025.

Colorado Court of Appeals, Div. II.

Dec. 7, 1995.

Rehearing Denied Jan. 25, 1996.

Certiorari Denied Sept. 23, 1996.

and of his flight before trial, and in holding that the asserted crime of attempted criminally negligent homicide is not legally cognizable in Colorado. We perceive no error in any of the court's rulings and, therefore, affirm.

During an argument concerning drugs, defendant shot the victim with a shotgun. Defendant contended that the shooting was an accident.

Before trial, defendant made threats to a witness. Thereafter, he failed to appear for his scheduled trial and was later apprehended. During the rescheduled trial, the trial court allowed the prosecution to introduce evidence of the threats and of defendant's flight as probative of consciousness of guilt.

At the close of the evidence, defendant requested that the jury be instructed on a lesser included offense of attempted criminally negligent homicide. The trial court rejected the proffered instruction.

### I.

Defendant first argues that the trial court's refusal to grant his request for testimonial use immunity for himself and a witness denied him his constitutional right to present a defense and to testify in his own behalf. We disagree.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Eric V. Field, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Walter Eggert, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree assault and attempted second degree murder. On appeal, he contends that the trial court erred by refusing to grant his request for use immunity for portions of his and another witness' testimony, in admitting evidence of threats defendant made to a witness

■ There are two separate and distinct types of witness immunity recognized by the law: transactional immunity and use immunity. Transactional immunity precludes prosecution for any transaction about which a witness testifies. Use immunity, however, acts only to suppress the witness' testimony and evidence derived directly or indirectly from that testimony in any prosecution of that witness. *Wheeler v. District Court*, 184 Colo. 193, 519 P.2d 327 (1974).

■ The applicable statute, § 13–90–118, C.R.S. (1987 Repl.Vol. 6A), adopted in its present form in 1983, provides only for use immunity. *See People v. Lederer*, 717 P.2d 1017 (Colo.App.1986). It states, in pertinent part:

(i) Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information ... and the person presiding over the proceeding communicates to the witness an order as specified in subsection (2) of this section, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; except that no testimony or other information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case, except a prosecution for perjury or false statement or otherwise failing to comply with the order.

(2) In the case of any individual who has been or may be called to testify ... the district court ... may issue, upon request of any district attorney, attorney general, or special prosecutor of the state of Colorado, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in subsection (1) of this section.

Under a plain reading of this section, a trial court may grant the use immunity specified in subsection (1) only upon the request, under subsection (2), made by a district attorney, attorney general, or special prosecutor. The trial court possesses no authority to order the prosecutor to make such a request, nor does it have the authority to grant immunity on its own initiative. *Harding v. People,* 708 P.2d 1354 (Colo.1985); *People v. Raibon,* 843 P.2d 46 (Colo.App.1992).

We are not persuaded by defendant's argument that *Harding v. People, supra,* is distinguishable because it construed the former version of § 13–90–118, which granted transactional immunity as opposed to use immunity for a witness' testimony.

Before its amendment, the statute provided, in pertinent part, that:

> Whenever in the judgment of any district attorney ... the testimony of any witness ... is necessary ... he may make application to the court that the witness be instructed to testify....

Colo.Sess.Laws 1972, ch. 99, § 154–1–18 at 574. As quoted above, the statute continues to make the grant of immunity by the court contingent upon the request by the district attorney. In both versions of the statute, therefore, immunity is available only upon the request of the prosecution.

Furthermore, a close reading of the language of *Harding* reveals that, while the court was most assuredly considering the predecessor statute which was promulgated in 1972, it also based its analysis upon the current statute as well and found the result as to both necessarily synonymous. The court stated:

> The district court properly denied Harding's motion for the court to immunize [the witness].... The only immunity available to Harding's witnesses was under section 13–90–118, 6 C.R.S. (*1973 & 1984* Supp.), which could only have been granted by court order on the request of the prosecution.

*Harding v. People,* 708 P.2d at 1358 (emphasis added).

Thus, the court's analysis under both the predecessor and successor statutes negates the argument that, in amending the statute, the General Assembly intended to bestow power upon a court to grant witness immunity on its own initiative.

■ Here, the People did not request use immunity for defendant or the witness. Accordingly, the trial court had no authority to grant the defendant's request.

■ Likewise, we reject defendant's contention that the trial court's refusal to grant use immunity for his own testimony impermissibly chilled his constitutional right to testify.

Defendant asserts that his right to testify in his own defense under *People v. Curtis,* 681 P.2d 504 (Colo.1984) conflicts under these circumstances with his Fifth Amendment right not to incriminate himself because the immunity he requested here would have applied only to crimes relating to possession and dealing of drugs or weapons, not the offenses charged. However, we are not aware of any controlling authority that would

constitutionally require the grant of use immunity under these circumstances.

Hence, we perceive no impermissible conflict here between defendant's right to testify and his Fifth Amendment rights.

## II.

Next, we reject defendant's contention that the trial court erred in admitting evidence of his flight before trial and his threats to a witness.

As a general rule, all relevant evidence is admissible. CRE 402. However, evidence that is relevant may be excluded, *inter alia*, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other like concerns specified in CRE 403.

Evidence is not unfairly prejudicial when it merely damages the defendant's case; to be unfairly prejudicial, hence excludable, it must have an undue tendency to suggest a decision on an improper basis, commonly an emotional basis such as sympathy, hatred, contempt, retribution, or horror. *People v. District Court,* 785 P.2d 141 (Colo. 1990).

Trial courts have broad discretion to determine the admissibility of evidence and to weigh its probative value against its prejudicial effect under CRE 403. *People v. Huckleberry,* 768 P.2d 1235 (Colo.1989). And, absent an abuse of that discretion, a trial court's evidentiary rulings will not be overturned. *People v. Aldrich,* 849 P.2d 821 (Colo.App.1992).

To establish an abuse of discretion, a defendant must show that the trial court's determination was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

On review, we must assume the maximum probative value that a reasonable fact-finder might give to the evidence and the minimum unfair prejudice which might reasonably be expected. *People v. Lowe,* 660 P.2d 1261 (Colo.1983).

## A.

First, we disagree with defendant's assertion that evidence of threats defendant made to a prosecution witness after she testified at a motions hearing was unfairly prejudicial and should have been excluded under CRE 403.

Evidence of a defendant's behavior, including threats against a witness, may be admissible to show that the accused was conscious of guilt and, by further inference, that he or she committed the crime charged. *People v. Lowe, supra.*

Threatening a witness is in itself a criminal act, and therefore, evidence that a defendant made such threats is generally not admissible except to show the defendant's consciousness of guilt upon a determination of relevance to the crime charged. *People v. Fernandez,* 687 P.2d 502 (Colo.App.1984).

It is a question of law for the trial court to determine whether evidence offered by the prosecution would support an inference of a defendant's consciousness of guilt for the crime charged. *People v. Fernandez, supra.* However, it remains a question of fact for the jury to determine whether a defendant's words or conduct actually evidence a consciousness of guilt. *Jordan v. People,* 151 Colo. 133, 376 P.2d 699 (1962).

Here, defendant threatened that he would make the witness' life "miserable" and tell her husband that he had "slept with her" if she did not change her testimony before trial. Defendant argues that this evidence was only marginally probative of his consciousness of guilt. He claims it was equally probative of his desire to ensure that the witness did not lie at trial.

The trial court determined that the defendant's threats were made to stop or change the witness' testimony. It further concluded that the prejudicial effect of the evidence did not substantially outweigh its probative value. Accordingly, the trial court admitted the evidence to show that defendant was conscious of his guilt as to this crime. The jurors were then properly permitted to decide whether they believed this evidence demonstrated his guilt or whether his behav-

ior was indicative of some other motive, as defendant claims.

We perceive no abuse of discretion in the trial court's determination here. It applied the proper legal standards and its determination that the evidence would properly support a consciousness of guilt is supported by the record.

## B.

Likewise, we reject defendant's contention that the trial court erred in admitting evidence that he fled before trial, missed his trial date, and did not appear until arrested and forcibly returned.

■ Evidence concerning a defendant's flight and efforts by police to locate and return him or her may be relevant to show consciousness of guilt. *People v. Baca,* 852 P.2d 1302 (Colo.App.1992); 1 C. Torcia, *Wharton's Criminal Evidence* § 214 (13th ed. 1972). In determining admissibility, the trial court is to apply the balancing test mandated by CRE 403.

■ Here, the trial court found that defendant was present at two motions hearings at which damaging evidence was admitted against him. It further found that he had made threats against a witness before he absconded on the eve of trial. Accordingly, the court determined that his flight was probative of consciousness of guilt.

Again, we perceive no abuse of discretion in the trial court's determination.

## III.

■ Finally, defendant argues that the trial court erred in refusing to give his proposed instruction on the assertedly lesser included offense of attempted criminally negligent homicide. He contends that such an offense is a legally cognizable crime in Colorado. We disagree.

Criminally negligent homicide has been described as follows:

A person commits criminally negligent homicide when he causes the death of another person by performing an act if, when he does the act, he fails to perceive a substantial and unjustifiable risk that a result will occur (namely, death) through a gross deviation from the standard of care that a reasonable person would follow.

*People v. Wheeler,* 772 P.2d 101, 105 (Colo. 1989).

Criminal attempt is defined by § 18-2-101(1), C.R.S. (1986 Repl.Vol. 8B), which states in pertinent part:

A person commits criminal attempt if, acting with the kind of culpability otherwise required for the commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct ... which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

In *People v. Thomas,* 729 P.2d 972 (Colo. 1986), the supreme court analyzed whether the crime of reckless manslaughter could provide a foundation for criminal attempt liability. The court held that attempted reckless manslaughter is a cognizable crime, and in doing so, it clarified attempt crimes in two important ways.

First, it rejected the premise that liability for criminal attempt is predicated upon a specific intent to commit the underlying crime. Rather, a defendant only need engage in the requisite acts or conduct with the kind of culpability otherwise required for the commission of the underlying offense.

Second, the court determined that culpability for criminal attempt focuses primarily upon the actor's purposeful conduct. Recognizing that an underlying offense could consist of elements of conduct, result, and circumstances, the *Thomas* court thus found it necessary to examine the mental state in relation to each type of element to see whether there "inheres in each the potential danger that signals the legislative intent to impose criminal attempt liability." *People v. Krovarz,* 697 P.2d 378, 381 (Colo.1985) ("The probability of future dangerousness, however, is not confined to ... those possessing the culpable mental state of specific intent.")

Using that analysis, the court held that the potential for danger and the risk of death

justified imposing criminal liability for attempted reckless manslaughter:

> When one engages in conduct that involves a risk of death that is both substantial and unjustified, *and is conscious of the nature and extent of the risk,* the actor demonstrates such a disregard for the likelihood that another will die as to evince a degree of dangerousness hardly less threatening to society than if the actor had chosen to cause death.

*People v. Thomas,* 729 P.2d at 976 (emphasis added). *See also People v. Castro,* 657 P.2d 932 (Colo.1983) (attempted extreme indifference murder is a cognizable offense).

Relying upon *Thomas,* defendant argues that attempted criminally negligent homicide similarly should be cognizable as a crime. According to defendant, the only difference between attempts to commit reckless manslaughter and criminally negligent homicide is the actor's awareness or lack thereof that the conduct engaged in is creating an unjustifiable and substantial risk. Defendant argues this is a distinction without a difference when it comes to the probability that the person will be dangerous in the future. We conclude that defendant's argument is flawed.

In accordance with *Thomas* and *Krovarz,* we are directed to analyze the elements of the underlying offense of criminally negligent homicide and determine the mental state attached to each element. Then, because culpability for criminal attempt focuses upon the actor's purpose which is to cause harmful consequences, we must determine whether the crime involves a potential danger which justifies criminal liability for attempt.

Here, we need only consider the mental state of negligence as it relates to the proscribed result of death. This is because, in contrast to reckless manslaughter which requires that the actor consciously disregard a known risk, the culpable mental state of "negligence" does not require intent or "purposefulness" to cause harm. Nor does it rise to the level of "conscious disregard" emphasized in *Thomas.*

Indeed, in an offense based upon negligence, the individual is charged for acting *without awareness,* that is, for failing to perceive that his or her behavior involves a substantial and unjustified risk of death. *See People v. Wheeler, supra.* In other words, a merely negligent actor by definition only fails to perceive the risk rather than consciously disregarding it; hence, he does not evidence purposefulness to cause harm. *See People v. Thomas, supra.*

Thus, while future dangerousness is not necessarily confined to actors whose conscious purpose is to engage in proscribed conduct or achieve proscribed results, nevertheless, we conclude that the probable potential for future danger is substantially less from persons who commit criminally negligent homicide than from those who commit reckless manslaughter. *Cf. People v. Wheeler, supra* (defendant may be charged with criminally negligent homicide as a complicitor if he or she is *aware* that the principal engaged in conduct grossly deviating from standard of reasonable care which poses a substantial and unjustifiable risk of death to another).

Further, under § 18–2–101(1), C.R.S. (1986 Repl.Vol. 8B), which defines criminal attempt, a person must engage in conduct constituting a substantial step toward the commission of the offense. And, that statute defines such a step as "any conduct … which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

We are persuaded that a person who acts in reckless disregard of a known risk indicates a "firmer purpose" than one who does not perceive such a risk but, nevertheless, acts in a way that a reasonable person would not act. For this reason, the existence of recklessness also justifies imposition of criminal attempt liability but the existence of mere negligence does not. *See People v. Thomas, supra.*

We therefore hold that attempted criminally negligent homicide is not a cognizable crime in Colorado.

Judgment affirmed.

CRISWELL and JONES, JJ., concur.