Opinion by JUDGE ROTHENBERG*
¶ 1 Defendant, Isidore A. Griego, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted reckless manslaughter and attempted second degree assault. We reverse and remand with directions to enter judgment of acquittal on both charges.
I. Background
¶ 2 On December 26, 2005, and October 7, 2006, defendant was observed operating a motor vehicle while intoxicated. On both of these occasions, he was issued a summons for driving while under the influence of alcohol *137 (DUI), a misdemeanor. § 42-4-1301(1)(a), C.R.S.2014.
¶ 3 The arresting officer in the 2005 incident was Patrol Officer Dan Hyde. He testified at trial that he saw defendant driving in Arapahoe County about 9:30 p.m. According to Officer Hyde, defendant's vehicle was travelling at a normal rate of speed but did not have the headlights on, so Officer Hyde drove directly behind defendant's vehicle and activated the lights on the police cruiser. Defendant did not pull over, and Officer Hyde described how defendant began to drive erratically until he turned into the parking lot of an apartment complex and stopped. Defendant had a strong odor of alcohol on his breath and was unsteady when he exited his vehicle.
¶ 4 The second incident occurred in the early morning of October 7, 2006. Patrol Officer John T. Jones responded to a report that a vehicle was stopped at a Littleton intersection, and that the driver of the vehicle was asleep at the wheel. No one else was in the vicinity of defendant's vehicle. Officer Jones testified that defendant's vehicle was stopped but was still running with defendant's foot on the brake, that it took him five minutes to awaken defendant, and that defendant had a strong odor of alcohol on his breath when he exited the vehicle.
¶ 5 While both DUI cases were still pending, Michael Knight, chief investigator in the 18th Judicial District Attorney's office, learned that defendant had previously been arrested for six alcohol-related driving offenses between 1992 and 2001. In February 2007, Knight contacted Thomas Malone, a senior investigator in the office. Knight asked Investigator Malone to investigate defendant's cases, to collect and evaluate information, and to determine whether additional charges should be filed against him.
¶ 6 Investigator Malone testified at trial that he conducted an extensive, independent, factual investigation of both cases; that he examined all of the available court, police, and motor vehicle records; and that he personally met with Patrol Officers Hyde and Jones.
¶ 7 Investigator Malone met with Officer Hyde on March 1, 2007, and they drove together to the scene where Officer Hyde had first observed defendant. According to Investigator Malone, "[W]e drove the same route that Officer Hyde drove the night he contacted the defendant." Investigator Malone said he took notes of their conversation, and "specifically asked [Officer Hyde] why he did not summons [defendant] for reckless driving." Investigator Malone explained that he asked that question because:
there was some weaving that was alleged ... in general proximity to other traffic, and I really wanted to find out from [Officer Hyde] how close this action was, these two vehicles passing each other, how close they were for the purposes of determining the danger involved, the potential danger involved in these two vehicles ... or this vehicle going down the road and other traffic going in the other direction.
¶ 8 Officer Hyde told Investigator Malone that he did not suspect a DUI immediately even though "[t]he [defendant's] headlights weren't on ... [because] there were no other driving actions [at that time] that [were] indicative of [reckless driving]." But Officer Hyde stated that, after he turned on his overhead lights, "the defendant's vehicle weaved into the other lane of traffic." Officer Hyde also described defendant's erratic driving behavior that night, including driving on the bike lane section of the road, striking a road sign, and running a red light. Nevertheless, Officer Hyde said he did not charge reckless driving "because the weaving ... was not an imminent sort of strike to [an oncoming] vehicle." Officer Hyde estimated the distance between defendant's vehicle and the oncoming vehicle, and stated that the oncoming vehicle had pulled over because that vehicle saw Officer Hyde's emergency lights on and was being careful to get off the road. The record contains conflicting evidence of the distance between the two vehicles, with Officer Hyde alternatively reporting a distance of 100 to 150 feet and 100 to 150 yards.
¶ 9 Officer Hyde's statement to Investigator Malone was consistent with his later testimony at trial; namely, that defendant's *138 weaving across the center line did not jeopardize or threaten any oncoming traffic, and that "the reason he didn't file reckless driving was because the facts didn't warrant it."
¶ 10 Investigator Malone also investigated the 2006 incident in which Officer Jones found defendant sleeping in his vehicle in a Littleton intersection. Investigator Malone summed up that incident as follows: "[F]rom just a review of the facts that it was a single vehicle. There were no other driving actions. There were no other vehicles. It was not an accident."
¶ 11 After conducting a "comprehensive investigation," Investigator Malone prepared a lengthy written report for the District Attorney's office stating that he concurred with both officers' assessments of the incidents, and that he "personally did not believe it to be appropriate" to file additional charges in this case.
¶ 12 The District Attorney's office nevertheless charged defendant with attempted reckless manslaughter and attempted second degree assault, two felonies. They also charged him with a violent crime based upon his alleged use of a deadly weapon, his automobile.
¶ 13 The complaint charging defendant of attempted reckless manslaughter alleged that defendant had "recklessly attempted to cause the death of any and all members of the public in his vicinity." The complaint charging him with attempted second degree assault alleged that he had "recklessly attempted to cause serious bodily injury to any and all members of the public in his vicinity."
¶ 14 Defendant filed a pretrial motion to dismiss, contending that (1) both of the charged offenses contemplated the possibility of death or serious bodily injury to another person and (2) the prosecution had failed to allege that he took a substantial step towards causing the death of another because it had not identified another person endangered by his behavior. The prosecution maintained that it was not required to name a specific victim or victims. The trial court denied defendant's motion, and later denied his motion for a judgment of acquittal at the close of the evidence.
¶ 15 At the jury trial, the prosecution presented evidence relating to the two charged felonies, and over defendant's objections, the trial court permitted the prosecution to present evidence under CRE 404(b) that defendant had previously been arrested for DUI six times between June 20, 1992, and September 30, 2001. The court instructed the jurors that they were only to consider these arrests for a limited purpose, which was to show that "defendant was aware of the risk created by the charged acts or conduct."
¶ 16 The prosecution's theory of the case did not vary during the trial. It was that defendant was guilty of two felonies because he got into his car and drove while intoxicated. The verdict did not depend on the manner in which he drove, but only the knowledge he had gleaned from his six previous arrests for driving under the influence of alcohol.
¶ 17 During her brief opening statement, the prosecutor told the jury the evidence would show that defendant "chose to place the lives of everyone around him at risk." She emphasized the "six other occasions" he had been caught driving while extremely intoxicated, which showed "that he knew the risks that he was taking ... because he's done it six times before." She also stated: "We heard about conscious disregard and magnitude of harm and likelihood of harm, but make no mistake, this case is about choice. [Defendant] made his choice...."
¶ 18 At the close of the case, the prosecutor told the jury she had to "prove that [defendant] took a substantial step towards the commission of the risk-producing act," and "the risk-producing act [was defendant] driving in his intoxicated condition." However, she added:
I don't have to prove to you that [defendant] took a substantial step toward killing someone, that he took a substantial step towards causing serious bodily injury. I have to prove that he took a substantial step towards the risk-producing action: drunk driving.
...
*139 [W]as [defendant's] car being used in a manner in which it was capable of causing death or serious bodily injury?
In discussing the December 2005 incident investigated by Officer Hyde, the prosecutor conceded that no one was injured. She stated: "[E]ven though no one got hurt, when [defendant] got in that car and he drove, he put everyone's lives at risk." Similarly, in discussing the October 2006 incident investigated by Officer Jones, the prosecutor conceded that no one was hurt. She stated:
No. [Defendant] didn't hurt anybody and no, no one was around. But what if the police weren't notified about [defendant]?
...
The risk isn't that snapshot of time of what the officer sees. It's the risk that [defendant] took when he got in that car and drove.
...
[Defendant] has been arrested six previous times for driving under the influence. He knows the risks....
...
He was driving a car on public roads with the general public and a wealth of knowledge about how his actions could kill.
During the final portion of her closing argument, the prosecutor stated:
[T]he allegation here is not that [defendant] was driving in a reckless manner. It is that he acted recklessly by driving at all in his condition. Unlike in reckless driving where the charge depends on the actions that the police officer sees, the way that he's driving, reckless manslaughter and attempted second-degree assault are about what could have happened
....
I don't have to prove to you that [defendant] hit any cars. I don't have to prove to you that there were near misses. I don't have to prove to you even that he weaved or even that he drove poorly. What I have to prove to you is that he acted recklessly by driving in his condition, that the mere act of driving, being so intoxicated you can't stay awake, knowing what you know, that is recklessness .
(Emphasis added.)
¶ 19 Defendant was convicted of both counts and sentenced to two years in the custody of the Department of Corrections for the attempted manslaughter and four years for the attempted second degree assault to be served concurrently.
II. Sufficiency of the Evidence
¶ 20 Defendant contends the prosecution failed to present sufficient evidence to show that "another person" was put in danger by his behavior in either incident. We agree.
A. Standard of Review
¶ 21 We review de novo whether the evidence introduced at trial was sufficient to support a conviction. Dempsey v. People, 117 P.3d 800, 807 (Colo.2005).
¶ 22 In assessing the sufficiency of the evidence supporting a guilty verdict, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. The prosecution is given the benefit of every reasonable inference that might fairly be drawn from the evidence. Kogan v. People, 756 P.2d 945 (Colo.1988), disagreed with by Erickson v. People, 951 P.2d 919 (Colo.1998) ; People v. Jones, 140 P.3d 325, 329 (Colo.App.2006). However, a criminal verdict based on "guessing, speculation, or conjecture" cannot stand. Kogan, 756 P.2d at 950 (internal quotation marks omitted); People v. Perez, 2013 COA 65, ¶¶ 38-39, --- P.3d ---- (concluding there was insufficient evidence to show that the defendant was aware the Social Security number he used belonged to an actual person and was not simply a random series of nine numbers) (cert. granted Dec. 23, 2013); see People v. Williams, 2012 COA 165, ¶ 45, 297 P.3d 1011 (concluding there was insufficient evidence to support the defendant's aggravated robbery conviction to show that the alleged victim had the right to exercise control over the money that was taken); People v. Strock, 252 P.3d 1148, 1154 (Colo.App.2010) (concluding that prosecution misstated *140 the elements of proximate cause by leading the jury to erroneously conclude it only had to determine Strock drove while intoxicated to convict him of vehicular homicide, but finding no plain error).
¶ 23 For example, in People v. Heywood, 2014 COA 99, ¶¶ 1-2, 357 P.3d 201, a division of this court concluded the evidence was insufficient to convict the defendant of internet sexual exploitation of a child under section 18-3-405.4(1)(b), C.R.S.2014, where the undisputed evidence proved "at most only that [the defendant], without any information about the viewer's age, invited a person to view a webcam stream of him masturbating, and then did not stop the stream until several minutes after the viewer had said that she was fourteen years old." The division concluded that "importuning, inviting, or enticing requires more than allowing such viewing to continue, after the actor comes to know or believe that the viewer is less than fifteen years old." Id. at ¶ 1.
B. Analysis
¶ 24 To be sure, defendant is a menace every time he drives a vehicle under the influence of alcohol, as is every other impaired driver. We also recognize the prosecution's interest in protecting the public by charging multiple repeat offenders with the severest penalties permitted by law, and we assume this is a good faith test case to determine the limits of the prosecution's authority.
¶ 25 However, the Colorado Supreme Court made it clear in Palmer v. People, 964 P.2d 524, 526 (Colo.1998), that "[t]he General Assembly has the exclusive authority to define criminal offenses ... [and] proscribe[ ] conduct and the culpable mental state that must accompany such conduct."
¶ 26 Where a challenge to the sufficiency of the evidence requires that a statute be interpreted, it must be interpreted to effectuate the General Assembly's intent. Heywood, ¶¶ 19-21 ; People v. Davis, 2012 COA 56, ¶ 13, 296 P.3d 219.
¶ 27 Determining that intent starts with the statutory language, giving common words and phrases their ordinary meanings. People v. Vecellio, 2012 COA 40, ¶ 14, 292 P.3d 1004. If a statute does not define a commonly used term, a court may refer to dictionary definitions to determine the ordinary meaning. People v. Connors, 230 P.3d 1265, 1267 (Colo.App.2010). Clear and unambiguous statutory language will be applied as written, without further analysis. Vecellio, ¶ 14.
¶ 28 Effectuating the General Assembly's intent requires that the statute be read and considered as a whole, giving consistent, harmonious, and sensible effect to all its parts. Id. In doing so, an interpretation that would render words or phrases superfluous should be rejected. Connors, 230 P.3d at 1267.
¶ 29 "A person commits the crime of manslaughter if ... [s]uch person recklessly causes the death of another person ." § 18-3-104(1)(a), C.R.S. 2014 (emphasis added).
¶ 30 "A person commits the crime of assault in the second degree if ... [h]e recklessly causes serious bodily injury to another person by means of a deadly weapon." § 18-3-203(1)(d), C.R.S.2014 (emphasis added).
¶ 31 A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. § 18-2-101(1), C.R.S.2014.
¶ 32 A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense. Id.
¶ 33 "A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18-1-501(8), C.R.S.2014. The manslaughter and second degree assault statutes both require a substantial risk to "another person" and the likelihood that "another person" will die or receive serious bodily injury. § 18-3-104 (by recklessly causing the death of another person); § 18-3-203 (by recklessly causing serious bodily injury to another person); see People v. Thomas, 729 P.2d 972, 976 (Colo.1986)
*141 ("[T]he actor demonstrates such a disregard for the likelihood that another will die as to evince a degree of dangerousness hardly less threatening to society than if the actor had chosen to cause death.").
¶ 34 We conclude that the term "another person," which describes the victim of the reckless action, is not superfluous language in either statute, and that the term is not satisfied by alleging the victim to be "any and all members of the public in [defendant's] vicinity."
¶ 35 Nor do the five cases relied upon by the People require another result. People v. Krovarz, 697 P.2d 378, 383 (Colo.1985), addressed the level of culpability in an attempted robbery case. It offers no guidance in resolving the issues here. In People v. Buerge, 240 P.3d 363, 368-69 (Colo.App.2009), a division of this court addressed the sexually violent predator statute and concluded that (1) the term "victim" meant "intended victim" and (2) "if a defendant intended, with the requisite culpability, to sexually assault a person, it [did] not matter that the intended victim was fictional or did not actually exist." Thus, Buerge also offers us little assistance in resolving the issues.
¶ 36 In People v. Palmer, 87 P.3d 137, 140 (Colo.App.2003), a division of this court affirmed the defendant's conviction for felony menacing despite the trial court's failure to list a specific victim. The division reasoned that "the intent element of burglary may be satisfied by proof that defendant had the intent to menace any occupant of the premises," but it also observed that specific victims were listed in a special verdict form. Id. at 141.
¶ 37 In People v. Eggert, 923 P.2d 230, 235-36 (Colo.App.1995), the division discussed the Colorado Supreme Court's holding in Thomas, 729 P.2d 972, that attempted reckless manslaughter is a cognizable crime in Colorado. But the Eggert division did not determine what would establish "another person" under the reckless manslaughter or second degree assault statutes.
¶ 38 People v. Fury, 872 P.2d 1280, 1283 (Colo.App.1993), is also distinguishable because the defendant there was charged with driving offenses, namely vehicular eluding and reckless driving, not attempted reckless manslaughter or attempted second degree assault. The division in Fury reasoned that "[t]he clear intent behind the vehicular eluding statute is to protect members of the public from the dangers created by a driver attempting to elude a police officer," and, therefore, that "the prosecutor is not required to specify one particular victim; any member of the public at large could be a victim." Id . Furthermore, the prosecution in Fury identified at least one individual who was placed in danger by the defendant; that individual testified at trial about how she had to move her car to avoid a collision with the defendant; and the trial court gave the jury a special interrogatory instructing it to select specific victims of the defendant. Id. at 1281, 1283.
¶ 39 Here, defendant was not charged with driving offenses, but with violating statutes that were intended to protect specific individuals, namely, the potential victim or victims of manslaughter or assault. Indeed, in every published appellate decision in Colorado addressing attempted reckless manslaughter, a specific victim was identified by the prosecution. See Riley v. People, 266 P.3d 1089, 1090 (Colo.2011) ; Arko v. People, 183 P.3d 555, 557 (Colo.2008) ; People v. Young, 16 P.3d 821, 822 (Colo.2001) ; Thomas, 729 P.2d at 973 ; People v. Whittiker, 181 P.3d 264, 272 (Colo.App.2006) ; People v. Tallwhiteman, 124 P.3d 827, 830 (Colo.App.2005) ; People v. Anderson, 70 P.3d 485, 486 (Colo.App.2002) ; People v. Allen, 78 P.3d 751, 752 (Colo.App.2001) ; People v. Silva, 987 P.2d 909, 913 (Colo.App.1999) ; People v. Palmer, 944 P.2d 634, 636 (Colo.App.1997), rev'd on other grounds, 964 P.2d 524 (Colo.1998) ; People v. Requejo, 919 P.2d 874, 875 (Colo.App.1996).
¶ 40 Turning to defendant's conviction of attempted reckless second degree assault, we have found no published cases in Colorado in which a defendant was convicted of attempted reckless second degree assault with a deadly weapon for conduct that did not substantially risk serious bodily injury to a discernible victim. Other jurisdictions have addressed analogous statutes, although some of them define assault as an attempt to commit *142 a battery. Nevertheless, we have found no cases in those jurisdictions where the victim was unidentified or nonexistent. See People v. Jones, 443 Mich. 88, 504 N.W.2d 158, 159 (1993) (defendant attempted to assault a police officer with scissors); Spencer v. State, 264 Kan. 4, 954 P.2d 1088, 1091 (1998) (defendant struck the victim with a pool cue).
¶ 41 Essentially, the People's argument in this case is that (1) defendant here committed two felony offenses when he turned on his vehicle and drove onto a public street while intoxicated; (2) he consciously disregarded the risk that he was likely to injure persons or property; and (3) this is evidenced by the fact that he had several prior arrests for driving under the influence of alcohol. We are not persuaded.
¶ 42 We conclude that, to secure a conviction under sections 18-3-104 and 18-3-203, the prosecution must establish that the defendant's behavior placed "another person," that is, a discernible person, at substantial risk for likely death or serious bodily injury. It is insufficient merely to establish that the defendant placed any and all members of the public in his vicinity at risk.
III. Application to this Case
¶ 43 As to the December 26, 2005, offense, Officer Hyde testified at trial that the only other vehicle he observed that conceivably could have been affected by defendant's driving was 100 to 150 feet from defendant's vehicle. There is a discrepancy in the record because Investigator Malone testified that he took notes when he interviewed Officer Hyde, and that Hyde said the unidentified vehicle was 100 to 150 yards from defendant's vehicle. Nevertheless, viewed in the light most favorable to the prosecution, the evidence established that, on December 26, 2005, defendant's vehicle was separated from any other vehicle by the length of half a football field. Similarly, the evidence established that, when defendant was arrested on October 7, 2006, there were no other individuals or vehicles in the vicinity.
¶ 44 We therefore conclude there is no evidence in the record from which a reasonable jury could find that defendant's driving on either date jeopardized or threatened any oncoming traffic or individuals.
¶ 45 Although many other states have done so, the Colorado legislature, as of the date of this opinion, has not enacted legislation that would enhance the punishment of multiple offenders who drive under the influence of alcohol. See, e.g., State v. Mattioli, 210 Conn. 573, 556 A.2d 584, 585-87 (1989) (holding that General Statutes of Connecticut § 14-227a(h)(3) (2014), which provides enhanced penalties for a third conviction of driving under the influence of alcohol "within five years after a prior conviction," applied to the defendant's third conviction even though only one of his two prior convictions occurred "within five years" of his present offense); Commonwealth v. Ball, 691 S.W.2d 207, 209 (Ky.1985) (concluding that Kentucky Revised Statutes § 189A.010 (West 2014), which was enacted by the Kentucky legislature to increase the severity of the penalty for driving under the influence of alcohol, did not create a new offence and is not limited to offenses committed after the effective date of the statute); State v. Lope, 343 P.3d 186, 189 (N.M.Ct.App.2014) (observing that New Mexico's driving while under the influence (DWI) statute, N.M. Stat. Ann. § 66-8-102 (2014), requires mandatory sentence increases for subsequent DWI convictions), cert. denied, 339 P.3d 425 (N.M.2014).
¶ 46 In summary, we conclude the evidence introduced at defendant's trial was insufficient to establish that he took a substantial step towards recklessly causing the death of another person or recklessly causing the serious bodily injury of another person. Accordingly, the trial court erred in denying defendant's motion for a judgment of acquittal as to both counts.
IV. Other Contentions
¶ 47 Given our conclusion, we need not resolve defendant's additional contentions that the trial court abused its discretion in admitting evidence of defendant's prior offenses under CRE 404(b), or that the manner in which he used his vehicles did not constitute the use of a deadly weapon. See People v. Stewart, 55 P.3d 107, 117 (Colo.2002) (concluding a motor vehicle is not always a deadly *143 weapon under the second degree assault statute, depending on how it is used in a particular situation).
V. Conclusion
¶ 48 The judgment of conviction is reversed and the case is remanded for entry of a judgment of acquittal on all counts.
JUDGE LICHTENSTEIN concurs.
JUDGE BOORAS dissents.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2014.