165 N.J. Super. 57 (1979)
397 A.2d 702
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN LEE COOPER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1978.
Decided January 10, 1979.
*59 Before Judges CONFORD, PRESSLER and KING.
*60 Mr. Philip A. Ross, designated counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender of New Jersey).
Ms. Susan W. Sciacca, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, J.A.D.
Defendant was tried on a two-count indictment charging robbery while armed in violation of N.J.S.A. 2A:141-1 and N.J.S.A. 2A:151-5, was found guilty and was sentenced to an aggregate State Prison term of eight to ten years. He now appeals, contending that (1) the evidence adduced at trial was insufficient to warrant defendant's conviction for the "armed feature" of robbery pursuant to N.J.S.A. 2A:151-5, (2) the trial judge erred in denying defendant's application for a mistrial when the victim uttered "other crimes" evidence before the jury, and (3) the in-court identification was tainted by an unnecessarily and improperly suggestive out-of-court identification procedure.
The State presented the following proof. On November 16, 1974 defendant entered Smitty's Bar in Asbury Park. He sat at the bar and ordered a glass of beer from the barmaid-owner of the tavern, Mildred Biedeman. He nursed this beer for about one hour. After ordering a second beer he stood up with his hand in his jacket pocket and announced that this was a holdup, saying, "I mean it." Defendant said he wanted the money from the cash registers and motioned with his hand in his pocket as if he had a gun.
After he obtained the money from the proprietor he ordered her and the two male patrons to go into a bathroom and sit on the floor. One of the men was ordered to take off his shoestrings and tie the hands of the other two together. Defendant then hit one of the patrons in the stomach and *61 warned him not to do anything, "or else." Defendant then fled and the police were summoned.
The entire incident took about five minutes. No gun was ever seen. Biedeman gave the police only a general description of defendant. She did tell them she could identify the assailant.
On December 8, 1974 Biedeman was notified by the police that a suspect had been apprehended in connection with a robbery at a Quick Check food store. She was asked to come to headquarters to view a photographic lineup to determine if this was the person who had robbed her in the bar.
There is a discrepancy in the witness' recollection of the conduct of the photographic lineup. Biedeman testified that she was first shown a book of about 50 photographs, none of which she could identify. The detective then silently handed her a single photograph of defendant which she immediately identified. Conversely, Detective DiBenedetto testified that Biedeman was initially shown 10 to 12 loose photographs of known robbery suspects, none of which she was able to identify. He then asked her to look through a book of about 100 photographs in which a picture of defendant had been randomly placed. After looking through about 30 pictures she identified defendant as her assailant.
The next day Biedeman returned to police headquarters to sign a complaint against defendant. While waiting in the corridor outside the municipal courtroom she was told by Detective DiBenedetto that "they're bringing the fellow in." To reach the courtroom defendant had to pass by Biedeman. As defendant was being escorted to the courtroom, Biedeman looked directly at him and immediately recognized him as her assailant.
After defendant entered the courtroom Biedeman started to walk in, believing that her presence was required. She was not asked to look into the courtroom. However, once she glanced inside DiBenedetto asked her to look at defendant. She then told the detective that she was "positive" he was *62 the man who robbed her. Biedeman again saw the defendant as he left the courtroom.
Both Biedeman and Bernard Johnson, one of the patrons at the bar, made in-court identifications of defendant. Johnson had been unable to make an out-of-court identification from a photographic montage. Defendant presented no evidence at the trial.

I
We first consider defendant's contention that the trial judge erred in denying his application for a mistrial when the State's first witness made a statement from which the jury could have readily inferred his implication in another robbery.
The following occurred during the first few minutes of Biedeman's direct examination as the State's initial witness. Biedeman was asked if she ever saw the defendant after the robbery and before the first day of trial. She replied, according to the official transcript:
A. No  oh, I did see him at the courthouse after he had  they had apprehended him, I guess it was in the robbery at the court check.
Defense counsel immediately requested a sidebar conference. Apparently it was unclear whether the witness had said "robbery at the court check" or "robbery at the quick check." Defense counsel, the prosecutor and Biedeman agreed that she said "quick check." The court and the official stenographer thought they heard "court check." However, there is no doubt from the transcribed record that the witness had alluded to another robbery for which defendant had appeared in municipal court in Asbury Park, committed about the same time as the instant offense.
The trial judge denied defendant's motion for mistrial and admonished the jury as follows:

*63 Ladies and gentlemen, in response to the last question, it seems to be an area of disagreement as to what was said by the witness in response to that question.
Because of this disagreement and because of what I heard, what other people think they heard, and I don't know what the jurors heard.
Now, I am going to instruct you that you are to disregard that question and disregard that answer that was given by the witness. And if whatever you heard that you are not to let that answer interfere with your deliberations with regard to this particular case.
Now, do any of you feel that you cannot follow that instruction? If you do, please raise your hand.
No answer being raised, the answer is in the affirmative, they can follow.
The emphasis to the jury was to disregard the answer because of "disagreement as to what was said." However, there was no disagreement about another robbery being mentioned. The only disagreement was about "quick" or "court."
We cannot accept the State's contention that this unfortunate statement volunteered by Biedeman was harmless and that the judge's allegedly curative instruction dissipated the potential for prejudice. During her testimony the witness described to the jury her confrontation with and identification of defendant on December 9 when he was brought in by the police to the Asbury Park Municipal Court on a matter obviously unrelated to the robbery at her bar. The jury most likely would have concluded that he was appearing there on the other robbery charge. The judge's curative instruction was inadequate and misdirected. The jury was told to disregard the testimony, not because of the great potential for prejudice which "other crimes" evidence possesses in a criminal case, but because there was a disagreement about what was said. Quite possibly conscientious jurors clearly hearing the reference to another robbery, which counsel, the judge and the witness agreed was made, might have weighed such reference with the other proofs, since they were not forcefully told what to ignore and why to ignore it. This, of course, assumes that *64 appropriate curative instructions are efficacious, an assumption which we customarily indulge. State v. Manley, 54 N.J. 259, 270 (1969).
"Other crimes" evidence has been historically considered extremely prejudicial to defendants in criminal cases because of the great potential for abuse. See State v. Sempsey, 141 N.J. Super. 317, 322-323 (App. Div. 1976), certif. den. 74 N.J. 272 (1977). In this brief two-day trial the revelation of the second robbery charge against defendant and his obvious court appearance thereon stands out starkly in the record, potentiating for prejudice. Combined with the suggestive identification procedure discussed infra which required the jury's close scrutiny, we cannot say the danger of abuse was remote and the unfortunate remark harmless.
We are satisfied that the potential for prejudice to the defendant in this situation outstrips the likelihood that the jurors did as they were told and completely disregarded what they certainly heard about another robbery for the reason given them by the judge: because of "the disagreement as to what was said." Our Supreme Court has stated in "most situations * * * the harmful effect can be sufficiently eradicated by immediate and strong admonitory instructions to the jury, which it is the obligation of the judge to give on his own initiative, so as to make a mistrial unnecessary." Greenberg v. Stanley, 30 N.J. 485, 503 (1959). The trial judge's cautionary instructions here did not meet this test. Even if they had, it is still questionable whether the prejudicial effect on the jury produced by testimony of a charge against defendant for committing another robbery at about the same time could have been overcome. The refusal to grant defendant's motion for a mistrial was a mistaken exercise of discretion and reversible error in this situation.

II
Because the case must be retried we address the defendant's contention that the pretrial identification procedures *65 employed by the police to secure the out-of-court identification were so impermissibly suggestive as to be conducive to an irreparable misidentification as a matter of law, denying him due process. Since the Wade proceeding is part of the trial itself, the trial judge's determination in the original proceeding is not the "law of the case" thereby precluding examination of the identification procedure anew on retrial. State v. Hale, 127 N.J. Super. 407, 412 (App. Div. 1974). (Miranda hearing). The parties are returned to the original positions on the new trial and may introduce new evidence and assert new defenses not presented at the first trial. United States v. Shotwell, 355 U.S. 233, 242, 78 S.Ct. 245, 2 L.Ed.2d 234 (1957).
Defendant maintains that the photographic lineup procedure which Biedeman said the police employed, coupled with the encounter of defendant one-on-one at the municipal court hearing on the other robbery charge, so irreparably tainted the in-court identification derived therefrom as to require its exclusion in addition to the exclusion of the out-of-court identifications. The trial court must determine on retrial whether the identification procedures actually employed in this case passed muster under the standards set forth in the controlling cases. Manson v. Braithwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 198-199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); State v. Farrow, 61 N.J. 434, 451 (1972); State v. Royster, 57 N.J. 472 (1971); State v. Matlack, 49 N.J. 491 (1967); State v. Zarinsky, 143 N.J. Super. 35 (App. Div. 1976), aff'd 75 N.J. 101 (1977); State v. Brewer, 142 N.J. Super. 70 (App. Div. 1975), aff'd o.b. 70 N.J. 329 (1976).
Where a defendant timely objects to the proof of the fact of an out-of-court identification on grounds of unfairness or to a proposed in-court identification because of "taint," he is entitled to a preliminary inquiry out of the *66 presence of the jury and a determination by the judge on the issues of unfairness and taint. The judge is only required to reach the issue of taint if he first finds unfairness. However, he may make a finding on taint if he finds no unfairness and in certain cases such a finding could avoid a remand.
Where the totality of circumstances justifies a finding that the out-of-court confrontation was so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification", Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), then the fact of the pretrial identification is inadmissible on the State's direct case. Such determination entitles defendant to challenge the admissibility of the proposed in-court identification of defendant by the same witness as "tainted" by the out-of-court identification because it was not based upon an independent source. Where the issue of "taint" is properly raised, the burden of proof is on the State to show "clear and convincing evidence" that the in-court identification is based on the witness' observations of defendant at the time of the criminal event and is not the product of the improperly suggestive out-of-court identification procedure, United States v. Wade, 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), or the words or conduct of the police. See State v. Farrow, supra, 61 N.J. at 451. If the State cannot shoulder this burden, the in-court identification must be excluded for "taint." See Conford, "Trial Procedure in Administration of `Wade' Rules on Identification", 95 N.J.L.J. 1243 (1972).
The touchstone is "reliability" according to the most recent expression of the United States Supreme Court. Manson v. Braithwaite, supra. This involves weighing the "corruptive influence" of the suggestive identification against the "opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the time of the confrontation, and *67 the time between the crime and the confrontation". Id. 432 U.S. at 114, 97 S.Ct. at 2253.
On retrial we expect the judge to analyze articulately the voir dire testimony presented in light of these factors when ruling on the admissibility of the out-of-court and in-court identification. The judge should make specific factual findings as to which witness' version he believes, and to what extent. In this case the trial judge was presented with two versions of the photographic identification made by Biedeman. She described a highly suggestive procedure wherein she was shown a book of pictures and thereafter a single photograph of the investigation's target. In contrast, Detective DiBenedetto described a much more professional and reliable method. He showed her a dozen or so loose photographs and then a book of 100 pictures in which he randomly placed defendant's picture. The trial judge's oral opinion is susceptible of the interpretation that he accepted Biedeman's version of the photographic identification. However, he made no clear finding as to which version he accepted. The absence of a clear finding by the trial judge unduly complicates appellate review. Of course, the trial judge at retrial should also analyze the suggestive confrontation at the municipal court on the day after the photographic identification and the potential impact of this procedure in light of the five criteria reviewed in Manson v. Braithwaite, supra; see also Neil v. Biggers, supra at 199.

III
Defendant next contends that the trial judge erroneously permitted the jury to consider the "armed feature" of the robbery because no gun was ever actually seen by the victim. We find no error in this regard for the reasons stated in State v. Brewer, 142 N.J. Super. 70, 76-77 (App. Div. 1975), aff'd o.b. 70 N.J. 329 (1976) and the reasons expressed by the trial judge. State v. Cooper, 140 N.J. *68 Super. 28, 33 (Law Div. 1976). See also, United States v. Amos, 566 F.2d 899 (4 Cir.1977); State v. Elam, 312 So. 2d 318 (La. Sup. Ct. 1975); People v. Jury, 3 Mich App. 427, 142 N.W.2d 910 (Ct. App. 1966); Commonwealth v. Myers, 200 Pa. Super. 177, 189 A.2d 331 (Super. Ct. 1963); contra, State v. Jackson, 27 N.C. App. 675, 219 S.E.2d 816 (Ct. App. 1975). See also, Annotation, "Robbery by means of a toy or simulated gun or pistol", 81 A.L.R.3d 1006, § 11 at 1055 (1977).
Reversed.