James Dean MILLER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 96–89.

Supreme Court of Wyoming.

March 27, 1998

Sylvia Lee Hackl, State Public Defender, PDP; Deborah Cornia, Assistant Public Defender, Megan L. Hayes (argued), Laramie, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director PAP; Joseph W. Cole, Student Intern (argued), for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

THOMAS, Justice.

The policy issue presented by this case is whether Wyoming is to adopt the unilateral theory or the bilateral theory of the crime of conspiracy. James Dean Miller (Miller) contends that regardless of the resolution of the policy question he was entitled to have the jury at his trial for conspiracy to commit the crime of kidnaping, in violation of WYO. STAT. §§ 6-1-303(a) and 6-2-201(a) (1988), instructed on the bilateral theory of conspiracy. He argues that, since the bilateral theory was given to the jury in his first trial, the bilateral theory became the law of the case, which should have been followed when the conviction at his first trial was reversed, and the case was remanded for a new trial. Collateral issues are presented concerning the sufficiency of the evidence to establish the crime of conspiracy under the bilateral theory and prosecutorial misconduct. We hold that Wyoming follows the majority of states in applying the unilateral theory to the crime of conspiracy, and the district court correctly instructed the jury on that theory in Miller's second trial. The record is sufficient to support the conviction of conspiracy to commit kidnaping, and no prosecutorial misconduct occurred that was prejudicial to Miller. The Judgment and Sentence entered in the district court is affirmed.

In the Brief of Appellant, Miller presents the issues in this way:

I. Whether the trial court erred in failing to adhere to the law of the case established in the defendant's first trial, and in adopting a new and conflicting theory of conspiracy at the defendant's retrial.

II. Whether there was sufficient evidence of a conspiracy to kidnap between the defendant and Ingersoll.

III. Whether the trial court erred in refusing to grant a mistrial after the prosecutor engaged in misconduct by making prejudicial statements regarding the defendant in the prosecution's closing rebuttal arguments.

The Brief of Appellee defines the three issues in this way:

I. Does the law of the case doctrine require that a trial court, upon reversal and remand for a new trial by an appellate court, give the same jury instructions at the second trial as were given at the first trial?

II. Did the State present sufficient evidence of a conspiracy to commit kidnapping involving appellant and Steven Ingersoll?

III. Did the district court properly refuse Appellant's Motion for a new trial after objection was made to the prosecutor's closing argument?

Miller's case comes before this Court for the second time. In *Miller v. State*, 904 P.2d 344 (Wyo.1995) (*Miller I*), Miller's conviction for conspiracy to commit the crime of kidnaping was reversed, and the case was remanded for a new trial. At the first trial, the district court instructed the jury on the bilateral theory of conspiracy. One ground for the reversal was instructional error relative to the role of Powell, an individual who had become an informant for the Wyoming Division of Criminal Investigation (DCI). A second ground for the reversal was the failure to grant a mistrial when a potential juror announced that he harbored bias against Miller because he believed Miller to have been implicated in the theft of a horse from him.

Relative to the instructional error, we ruled that, on the instructions given to the jury, Powell could not be a co-conspirator after he became a government agent. We also held that the jury was not adequately instructed with respect to that distinction, leaving open the possibility that the jury found a conspiracy between Miller and Powell after Powell became a government agent. In the course of our first opinion, the Court

did not articulate the proposition that the bilateral theory of conspiracy was the law of the case. We spoke to law of the case only with respect to the instruction that advised the jury that there could be no conspiracy with a government agent. By analogy the comment could be extended to other instructions given to the jury, but we carefully articulated the proposition that the instruction was the law of the case only for purposes of that appeal.

*Miller I* relates the factual background leading to the charges. As reported in *Miller I* and substantiated in this record, Miller was confined in the minimum security wing of the Wyoming State Penitentiary at Rawlins. There he became acquainted with Steven Ingersoll (Ingersoll), another inmate. Ingersoll told Miller that he had access to some firearms, and Miller endeavored to arrange to purchase weapons from him. The first opinion of the Court discusses Miller's explanation of his involvement by pointing out that he wanted to report Ingersoll's furnishing of the weapons to achieve a reduction of his sentence. Miller previously had turned in weapons at the penitentiary, and his cooperation with the State in that and other ways had caused several officials to recommend that he be granted a sentence reduction.

Ingersoll contacted his friend, James Stacy Powell (Powell), in Sheridan to see if Powell could get the firearms. Powell said that he could, and their arrangement called for the weapons to be delivered to Rawlins. Powell then would be paid $2,500. Miller's plans expanded beyond the weapons transaction, however, and he decided to pay Powell to "watch somebody." That proposal developed into a scheme for Powell to kidnap Miller's ex-wife and children.

Miller offered to let Ingersoll escape from prison with him in exchange for Ingersoll's help with the kidnaping. Ingersoll again contacted Powell by telephone and asked Powell if he would be interested in the kidnaping, advising him that it would pay $50,000. Following a series of phone calls, Powell advised DCI of this plan, and, that same day, a DCI agent went to Powell's home and arranged to record future phone calls that Powell received from Ingersoll and Miller. Several such calls were recorded between July 14 and July 21 of 1993.

The parties are in accord that the recordings of the telephone conversations with Powell were made while he was acting as a government agent and under the direction of law enforcement officers. Neither party disputes the fact that during these conversations Powell and Miller discussed the floor plan of Miller's ex-wife's home; the place where the hostages would be held; the method of financing the kidnaping; and the possibility that Miller's niece or Miller's brother would help in the abduction. During this same time frame, Ingersoll mailed floor plans to Powell, doing this for Miller who was unable to find a stamp.

On September 13, 1993, Miller was charged with conspiring to kidnap his ex-wife. He initially was tried in Sheridan County and convicted. The jury instructions at the first trial adopted the bilateral theory of conspiracy. The jury also was advised by those instructions that a government agent cannot be a co-conspirator. Following a reversal by this Court and a remand of the case for a new trial, Miller was tried again in February of 1996. At the second trial, the district court, relying on public policy reasons, adopted the unilateral theory of conspiracy and so instructed the jury. Miller made an appropriate objection to that instruction. The district court rejected an instruction proposed by Miller that a government agent could not be a co-conspirator on the ground that the instruction would simply confuse the jury. Miller again was convicted and sentenced to a term of seven to fourteen years in the Wyoming State Penitentiary. Miller now appeals from that conviction.

If accepted, Miller's argument that the bilateral theory of conspiracy had become the law of this case would be dispositive. If the district court was required to instruct on the bilateral theory of conspiracy, it obviously did not do so. We hold, however, that the bilateral theory of conspiracy did not become the law of the case for purposes of the second trial. Miller's claim is refuted by the rules applicable to new trials generally, which also reach the situation in which a case is re-

versed on appeal and remanded for a new trial.

■■■ It is accepted law in the jurisdictions where there has been occasion to consider the question in the last thirty years that when a new trial is granted in a criminal case, the case is tried *de novo* and rulings made in connection with the first trial are not binding in the second trial. *U.S. v. Akers,* 702 F.2d 1145, 1148, 226 U.S.App.D.C. 408 (1983); *State v. Darwin,* 161 Conn. 413, 288 A.2d 422, 425–26 (1971); *Bell v. State,* 650 So.2d 1032, 1034 (Fla.App.1995); *People v. Brown,* 222 Ill.App.3d 703, 165 Ill.Dec. 176, 183, 584 N.E.2d 355, 362 (1991), *appeal denied,* 144 Ill.2d 636, 169 Ill.Dec. 145, 591 N.E.2d 25 (1992); *State v. Osburn,.* 216 Kan. 638, 533 P.2d 1229, 1233 (1975); *Hobbs v. State,* 231 Md. 533, 191 A.2d 238 (1963); *State v. Cooper,* 140 N.J.Super. 28, 354 A.2d 713 (1976), *rev'd by,* 165 N.J.Super. 57, 397 A.2d 702, 706 (1979), *cert. granted,* 81 N.J. 56, 404 A.2d 1155 (1979), *appeal and cert. dismissed by,* 81 N.J. 261, 405 A.2d 806, (1979) (plea of guilty was entered prior to ruling); *Com. v. Hart,* 479 Pa. 84, 387 A.2d 845, 847 (1978); *State v. Squires,* 248 S.C. 239, 149 S.E.2d 601, 605–06 (1966); *State v. Kinsey,* 7 Wash.App. 773, 502 P.2d 470, 471 (1972). Unless specific direction is encompassed in the ruling of the appellate court, the remand of a case for a new trial invokes the same propositions. We are satisfied that this approach is consistent with those cases in which we have reversed an order granting summary judgment and returned the case to the trial court. For example we have said:

> Husman relies upon the general rule as stated in 5B C.J.S. *Appeal and Error, supra,* § 1950 at 511 [1958], to support its claim:
>
>> The effect of a general and unqualified reversal of a judgment, order, or decree is to nullify it completely and to leave the case standing as if such judgment, order, or decree had never been rendered, except in so far as rights to a new trial or further proceedings may survive.
>
> We agree with the rule cited by Husman and repeated by a large number of jurisdictions around the country. *See, e.g.,*

*Shilts v. Young,* 643 P.2d 686 (Alaska 1981).

*Triton Coal Co. v. Husman, Inc.,* 846 P.2d 664, 668 (Wyo.1993). These propositions lead to the conclusion that the district court in this case was not inhibited by rulings made during the first trial, and was free to try the case as though it had not previously been tried. It follows that the reliance by Miller upon the law of the case is erroneous and furnishes no basis for a claim of error upon appeal.

■■■ While Miller primarily relies upon his claim of entitlement to relief under the law of the case doctrine, the instruction on the unilateral theory of conspiracy poses a novel question for Wyoming. For that reason we consider whether that instruction was a correct instruction on the law. The Supreme Court of North Dakota has distinguished the bilateral theory of conspiracy from the unilateral theory in this way:

> "Under a unilateral formulation, the crime is committed *when a person agrees* to proceed in a prohibited manner; under a bilateral formulation, the crime of conspiracy is committed *when two or more persons agree* to proceed in such manner. *See Note* [Conspiracy; Statutory Reform Since the Model Penal Code, 75 Colum.L.Rev. 1122, 1136 (1975)]. Under either approach, the agreement is all-important to conspiracy. Under the unilateral approach, as distinguished from the bilateral approach, the trier-of-fact assesses the subjective individual behavior of a defendant * * *. Under the traditional bilateral approach, there must be at least two 'guilty' persons, two persons who have agreed"

*State v. Rambousek,* 479 N.W.2d 832, 833–34 (N.D.1992), *citing State v. Kihnel,* 488 So.2d 1238, 1240 (La.App.1986).

Prior to its revision in 1982, as amended in 1983, the statute making conspiracy a crime in Wyoming read:

> If two (2) or more persons conspire to (a) commit a felony in the state of Wyoming or to commit an act beyond the state of Wyoming which if done in this state would be a felony, and (b) one (1) or more of such persons do any act, within or with-

out the state of Wyoming, to effect the object of the conspiracy, each, upon conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years or both. A conspiracy may be prosecuted in the county where the conspiratorial agreement or combination was entered into, or in any county where any act or acts evidencing the conspiracy or in any county wherein the furtherance of its purpose took place.

WYO. STAT. § 6–1–117 (1977). As revised in 1982, and then amended in 1983, this statute now reads:

(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

(b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.

(c) A conspiracy may be prosecuted in the county where the agreement was entered into, or in any county where any act evidencing the conspiracy or furthering the purpose took place.

WYO. STAT. § 6–1–303 (1988).

■ The new version was adopted from both the Model Penal Code and the laws of neighboring states. See THEODORE E. LAUER, *Goodbye 3–Card Monte: The Wyoming Criminal Act of 1982*, 19 Land & Water L.Rev. 107, 119 (1984). The Model Penal Code, like the new version of the Wyoming statute, defines conspiracy in the context of a single actor agreeing with another, and this language is said to adopt the unilateral approach. MODEL PENAL CODE & COMMENTARIES § 5.03(b) at 382–398 (Official Draft & Revised Comments 1985). While federal courts have continued to follow the bilateral theory of conspiracy, the modern trend in state courts is to rule that a conspiracy count is viable even when one of the participants is a government agent or is feigning agreement. *See generally,* MODEL PENAL CODE & COMMENTARIES § 5.03(b) at 382–398 (Official Draft & Revised Comments 1985); 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., *Substantive Criminal Law* § 6.4(d). *Compare U.S. v. Barboa,* 777 F.2d 1420, 1422 (10th Cir.(N.M.) 1985) *with State v. Null,* 247 Neb. 192, 526 N.W.2d 220, 229 (1995); *Com. v. Sego,* 872 S.W.2d 441, 443 (Ky.1994); *State v. Conway,* 193 N.J.Super. 133, 472 A.2d 588 (1984); *State v. Hohensee,* 650 S.W.2d 268, 275 (Mo.App.1982) *(rev'd in part on other grounds ).* The focus under the unilateral theory is on the culpability of the defendant, without any necessity to establish the guilty mind of one or more co-conspirators.

When we compare the first sentences of the earlier and current statutes in Wyoming, we find that the old statute began "[i]f *two (2) or more* persons conspire to (a) commit a felony in the state of Wyoming * * *," while the new statute reads, *"[a] person is guilty of conspiracy to commit a crime if he* agrees with one (1) or more persons that they or one (1) or more of them will commit a crime * * *." (Emphasis added.) Our research discloses that most states that have adopted this second definition of the crime of conspiracy have embraced a unilateral approach to conspiracy, and we hold that is appropriate in Wyoming.

Other states have justified the unilateral theory of conspiracy as sound public policy. A person who believes he is conspiring with another to commit a crime is a danger to the public regardless of whether the other person in fact has agreed to commit the crime. As one text writer has expressed the proposition, "such an approach is justified in that a man who believes that he is conspiring to commit a crime and wishes to conspire to commit a crime has a guilty mind and has done all in his power to plot the commission of an unlawful purpose." FRIEDMAN, *Mens Rea in Conspiracy,* 19 Modern L.Rev. 276, 283 (1956), *adopted in,* 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., *Substantive Criminal Law* § 6.4(d) n. 109 at 73. Miller's case furnishes a textbook example of the justification for a unilateral approach. Miller's guilty mind was not diminished by the fact that Powell had made an agreement to serve as a law enforcement informant. It is true that

Miller's chance of succeeding in kidnaping his family under the circumstances was minimal, but Miller has "nonetheless engaged in conduct which provides unequivocal evidence of his firm purpose to commit a crime." 2 WAYNE R. LaFAVE & AUSTIN W. SCOTT, JR., *Substantive Criminal Law* § 6.4(d) at 73 (footnote omitted). It is our conclusion that we should follow the majority rule of our sister states, and we hold that valid public policy as well as the language and the legislative history of our conspiracy statute make the unilateral approach to conspiracy the law of Wyoming.

In his second issue, Miller argues that there is insufficient evidence to establish a conspiracy to commit the crime of kidnaping between Miller and Ingersoll. This argument is premised upon the assumption that the bilateral theory of conspiracy is the law of the case, and the concession on the part of the State that Powell could not be a member of the conspiracy. In light of our conclusion that the instruction on the unilateral theory of conspiracy is correct, we have examined the record and are satisfied that there is more than sufficient evidence to sustain Miller's conviction for the crime of conspiracy since under a unilateral theory of conspiracy, the capacity of Powell to engage in the crime of conspiracy is not an issue.

In his final argument, Miller contends that the trial court erred in refusing to grant a mistrial because of prosecutorial misconduct during closing arguments. The denial of a motion for a mistrial is a ruling made within the sound discretion of the court, and can be reversed only when that discretion has been abused. *Paramo v. State,* 896 P.2d 1342, 1346 (Wyo.1995). As described in *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986) judicial discretion is:

> a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

Further, the party asserting prosecutorial misconduct is charged with the burden of establishing that substantial prejudice oc-

curred. *Armstrong v. State,* 826 P.2d 1106, 1115 (Wyo.1992).

Miller's complaint is premised upon statements the prosecutor uttered during rebuttal argument at closing. The prosecutor said to the jury that Miller's Counsel "asked you to look at the Defendant's actions through the eyes of a reasonable, realistic and sensible human being. If this Defendant was reasonable, realistic and sensible, he never would have been in the penitentiary in the first place." Miller's attorney immediately requested a conference at the bench. Counsel then moved for a mistrial stating that the prosecutor had implied "that because my client had been convicted of other crimes in the past he should be convicted of this crime." The trial court denied Miller's motion, but in response to the complaint, furnished a cautionary instruction to the jury which stated:

> The fact that this Defendant may have been convicted of a prior crime is not evidence that he committed the crime for which he is charged in this case; therefore, you must not consider conviction of a prior crime when reaching your verdict in this case.

We hold that the prosecutor's statement was not improper in the context of the entire argument, but even if it were, any prejudice was cured by the cautionary instruction which the court promptly furnished to the jury. Under these circumstances, there was no abuse of the court's discretion in denying the motion for mistrial.

We hold that when a case is reversed and remanded for a new trial, it stands for trial as though the first trial had not occurred subject to any specific direction by this Court. The trial court was not bound to give an instruction on the bilateral theory of conspiracy because that theory was followed in the first trial, and the unilateral theory of conspiracy is reflected in the statute now in place in Wyoming. Under the unilateral theory of conspiracy there was ample evidence to sustain Miller's conviction. The trial court committed no abuse of discretion in denying

the motion for mistrial. The Judgment and Sentence of the district court is affirmed.