The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Daniel ZAMARRIPA–DIAZ,
Defendant–Appellant.

No. 06CA0186.

Colorado Court of Appeals,
Div. III.

March 20, 2008.

Rehearing Denied June 5, 2008.

John W. Suthers, Attorney General, Sean A. Moynihan, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Daniel Zamarripa–Diaz, appeals the judgment of conviction entered against him upon jury verdicts finding him guilty of first degree burglary, a class three felony, and first degree criminal trespass, a class five felony, as well as attempted third degree assault and criminal mischief, both misdemeanors. We conclude there was error, but not plain error warranting reversal, and therefore affirm.

Zamarripa–Diaz was arrested after an incident during which he broke two windows and entered the victims' residence in the middle of the afternoon while intoxicated from drinking alcohol. He ransacked the house and apparently gathered some cameras. When the victims returned home and noticed the broken windows, one victim stayed outside and called the police. The other victim, who had been trained in hand-to-hand combat through her job with the Colorado State Patrol, entered the house, observed Zamarripa–Diaz, and attempted to detain him by placing his left arm behind his back. Zamarripa–Diaz swung his right arm out toward the victim, broke free of her grasp, and then fled when she screamed at him to leave. Both victims, yelling for help, chased Zamarripa–Diaz down the street and were aided by two people who stopped him. At that point, Zamarripa–Diaz sat on the ground and cried and made no further attempt to flee. The house was in disarray as a result of Zamarripa–Diaz's conduct, but the only item missing was a faux leather jacket, which he was wearing at the time of arrest.

### I. Jury Consideration of Lesser Included Offense

Zamarripa–Diaz contends the trial court erred by instructing the jury that it could not consider the lesser included offense of second degree burglary unless it unani-

mously determined that he was not guilty of first degree burglary. We agree there was error, but conclude it was not plain error warranting reversal.

## A. Plain Error Review

Because Zamarripa–Diaz did not object at trial, we review for plain error. *See* Crim. P. 52(b); *People v. Madison,* 176 P.3d 793, 805 (Colo.App.2007).

Plain error is error that is both "obvious and substantial." *See People v. Miller,* 113 P.3d 743, 750 (Colo.2005); *People v. Stewart,* 55 P.3d 107, 119 (Colo.2002). It is an error that "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." *People v. Sepulveda,* 65 P.3d 1002, 1006 (Colo.2003). For reversal under a plain error standard in the context of jury instructions, the defendant must "demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction." *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001) (quoting *Bogdanov v. People,* 941 P.2d 247, 255–56 (Colo.1997)). The failure to instruct the jury properly does not amount to plain error if the instruction, read in conjunction with other instructions, adequately informs the jury of the law. *See Miller,* 113 P.3d at 750. An erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or the record contains overwhelming evidence of the defendant's guilt. *Id.*

## B. Obvious Error

We conclude that the error here was obvious.

It is the trial court's duty to instruct the jury correctly on all matters of law. *Stewart,* 55 P.3d at 120. A criminal defendant is entitled to a jury instruction on a lesser included offense when a jury could have a reasonable doubt of the defendant's guilt of the greater offense but be convinced beyond a reasonable doubt that the defendant is guilty of the lesser included offense. *Bowers v. People,* 617 P.2d 560, 562 (Colo. 1980). As set forth in *People v. Bachicha,*

940 P.2d 965, 967 (Colo.App.1996), it is error to instruct a jury that it must unanimously acquit a defendant of a greater offense before it may consider a lesser included offense.

Here, the written verdict form for first degree burglary set forth the relevant choices for the jury. It could find Zamarripa–Diaz not guilty of count one, first degree burglary; not guilty of second degree burglary, a lesser included offense of count one; guilty of first degree burglary; or guilty of second degree burglary. The verdict form instructed the jury, as pertinent here: "You should not consider the lesser included offense of SECOND DEGREE BURGLARY unless your verdict as to [FIRST DEGREE BURGLARY] is not guilty." The trial court also gave this instruction orally prior to deliberations. The jury was instructed that its verdict must be unanimous.

Thus, the jury was improperly instructed that it must unanimously determine that Zamarripa–Diaz was not guilty of the greater offense of first degree burglary before it could consider the lesser included offense of second degree burglary. That is an incorrect statement of the law in Colorado. *See id.* We reject the People's argument that we should reach the opposite conclusion based on dicta in *People v. Padilla,* 638 P.2d 15, 17 (Colo.1981) (discussing requirement in federal jury instructions for unanimous acquittal on greater offenses before considering lesser included offenses).

## C. Substantial Error

Nevertheless, we conclude that although the error was "obvious," it was not substantial, and thus there was no plain error.

It is undisputed that Zamarripa–Diaz was entitled to an instruction on the lesser included offense of second degree burglary, and the jury was so instructed.

However, based on our review of the record, we conclude that there is not a reasonable possibility that the erroneous instruction discussed in part B contributed to Zamarripa–Diaz's conviction. *See Garcia,* 28 P.3d at 344.

To convict Zamarripa–Diaz of first degree burglary, the jury was required to find, among other things, that he menaced any person. It was further instructed:

The elements of the crime of menacing are:

1. That the defendant,

2. In the State of Colorado, at or about the date and place charged,

3. By threat or physical action,

4. Knowingly placed or attempted to place another person in fear of imminent serious bodily injury.

To prove the menacing element of first degree burglary, the prosecution adduced evidence from the victim that she observed Zamarripa–Diaz in her house, confronted him, and placed his left hand behind his back. She testified that Zamarripa–Diaz then swung his free hand in a "pretty forceful" manner, trying to hit her. She further testified that had she not made an evasive move, she would have been hit.

Zamarripa–Diaz maintains that this evidence could reasonably support a conclusion that he acted defensively in an effort to break free from the victim and flee, and did not intend to place her in fear of imminent serious bodily injury.

However, no contrary evidence was presented regarding this encounter. We are confident that this evidence was sufficient to enable the jury to conclude that Zamarripa–Diaz's conduct knowingly placed or attempted to place the victim in fear of imminent serious bodily injury, because she would have been hit if she had not evaded his intended blow.

Accordingly, we conclude that the record does not reveal a reasonable possibility that the instructional error noted above contributed to Zamarripa–Diaz's conviction of first degree burglary.

## II. Consultation with Counsel Regarding Questions Posed by Jurors

Zamarripa–Diaz also contends the trial court committed reversible error by posing the jury's questions to the witnesses without first consulting defense counsel. We disagree.

▮ Pursuant to Crim. P. 24(g), jurors in criminal trials may ask questions of witnesses, which are posed through the court. That rule states:

Jurors shall be allowed to submit written questions to the court for the court to ask of witnesses during trial, in compliance with procedures established by the trial court. The trial court shall have the discretion to prohibit or limit questioning in a particular trial for reasons related to the severity of the charges, the presence of significant suppressed evidence or for other good cause.

Such questioning is not a per se violation of the defendant's constitutional rights. *Medina v. People*, 114 P.3d 845, 857 (Colo.2005).

Nevertheless, Zamarripa–Diaz contends that we should review his contention for structural error because the failure to consult with counsel before the trial court asks juror-posed questions "impacts the framework of the trial itself." *See Miller*, 113 P.3d at 749 (structural errors are those defects affecting the framework within which the trial proceeds). Contrary to Zamarripa–Diaz's contention, the supreme court in *Medina* held that "neither the United States Supreme Court nor the majority of state courts have held that allowing a juror to ask a question impacts the framework in which a criminal trial proceeds." *Medina*, 114 P.3d at 857. Accordingly, the *Medina* court rejected the defendants' assertion "that we should apply structural error when an improper question from the jury is asked of a witness," *id.* at 858, and, instead, concluded that a trial court's alleged error in this regard would be reviewed for harmless error. We see no reason to depart from this analysis with respect to the asserted requirement that the trial court consult with counsel before asking juror-posed questions.

▮ When a trial court errs by asking an improper question from a juror, the impact of the ruling is reviewed for harmless error to determine whether, when the evidence is viewed as a whole, the error substantially influenced the verdict or impaired the fairness of the trial. *Id.* If the testimony elicited

by the juror's question was not new or different from other evidence already admitted, any error in permitting the question is harmless. *See People v. Milligan,* 77 P.3d 771, 778 (Colo.App.2003).

### A. Propriety of the Court's Procedure

 Here, Zamarripa–Diaz claims the court exceeded its authority when it denied defense counsel's request to see all the jury questions before the court posed them to the witnesses and exposed counsel to the risk of alienating, offending, or embarrassing a juror by objecting to that juror's question. He claims this procedure violated his due process rights and is not condoned by the Colorado Supreme Court. On the contrary, the rule promulgated by the supreme court expressly provides for the questions to be submitted "in compliance with procedures established by the trial court" and states that the "trial court shall have the discretion to prohibit or limit" juror questioning in a trial. Crim. P. 24(g). Here, the trial court's procedure was to review questions submitted by the jurors and ask those questions it deemed to be proper, leaving counsel free to raise an objection. Zamarripa–Diaz has not identified anything manifestly arbitrary, unreasonable, or unfair about this procedure. *See People v. Riggs,* 87 P.3d 109, 114 (Colo.2004).

 While we think it would be better practice that a trial court consult with counsel prior to asking the jurors' questions, we disagree with Zamarripa–Diaz's contention that *Medina* requires that a trial court do so to satisfy the requirements of due process. *See Dunlap v. People,* 173 P.3d 1054, 1081 (Colo.2007) (Due Process Clauses of Colorado and United States Constitutions guarantee every criminal defendant the right to a fair trial by an impartial jury).

Zamarripa–Diaz relies on the supreme court's statement in *Medina* that "[w]hen the applicable rules of law and evidence are applied *and after consulting with counsel,* the decision of whether to ask a juror's question is committed to the sound discretion of the trial court." *Medina,* 114 P.3d at 847 (emphasis added). Thus, Zamarripa–Diaz argues, because the emphasized phrase was part of the supreme court's holding, *Medina*

requires the court to consult with counsel before asking questions posed by the jurors.

However, as we read *Medina,* the emphasized phrase is dictum in what otherwise appears to be the supreme court's holding, which concerned the propriety of juror-posed questions. More significant, the *Medina* court reviewed juror questioning of witnesses pursuant to a pilot project to study the effects of allowing jury questioning in criminal trials. *Id.* Consultation with counsel prior to asking the jurors' questions was part of the policies and procedures provided to the trial courts by the Colorado Jury Reform Pilot Project Subcommittee. *Id.* at 847, 857. Following the report of the Jury Reform Pilot Project, the supreme court promulgated Crim. P. 24(g), which applies to juror-posed questions in criminal cases. That rule does not require consultation with counsel. Accordingly, this language in Crim. P. 24(g) reinforces our conclusion that the supreme court did not intend to include consultation with counsel in its holding as a prerequisite to the trial court's asking juror-posed questions.

 Here, after the second witness testified, defense counsel asked to see the jurors' questions before they were asked. The trial court denied the request and stated it was the court's duty to look at the questions first and it would ask the questions that were proper. The court reminded counsel he was free to object to any question and stated that instructions would cure counsel's concern that the procedure would cause jurors to think he took "some kind of possible offense" to the jurors' questions if he objected. The court instructed the jury that its decision whether to ask a juror's question was based on applicable rules of evidence, not on the facts of the case, and that the jury must consider all the evidence and give no greater weight to questions submitted by jurors. The court also instructed the jury it should draw no conclusions from objections or rulings on the objections. Absent a showing to the contrary, we presume that a jury follows the trial court's instructions. *People v. Harlan,* 8 P.3d 448, 473 (Colo.2000).

Further, Zamarripa–Diaz's contentions— that juror questioning exposed counsel to a risk of offending a juror if he objected, relieved the prosecution of its burden of proof,

converted the jury into an adversarial body, allowed the prosecution to restructure its case, and affected the framework of the trial itself—were all rejected by the court in *Medina*, 114 P.3d at 854–57.

### B. Propriety of the Testimony Elicited upon Jury Questioning

 At the conclusion of each witness's testimony, the court invited questions of the jury. The jury had questions for three of the six witnesses who testified at trial. Zamarripa–Diaz did not contemporaneously object to the juror questions asked of these three witnesses. Even if we assume his general objection, made after the second witness testified, "to any questions from the jury" was sufficient to preserve his current contention concerning testimony elicited pursuant to jury questions asked of one of the victims, we conclude there was no error. Zamarripa–Diaz contends that this testimony, that his blood was found in "remote" areas of the house where valuable items were located, did not clarify testimony presented but, instead, impermissibly addressed "critical areas which the prosecutor failed to address." *See* Crim. P. 52(b). The record does not support this contention.

Though not in precisely the same way, all the subjects about which the victim testified pursuant to the jury's questions had been addressed in her testimony on direct and cross-examination: broken windows; blood or disturbance of items throughout the house, including the upstairs bedroom and closet, the downstairs bedroom, the art room, and the basement; and Zamarripa–Diaz's clothing and appearance. We perceive no error in the admission of this testimony. *See People v. Boehmer*, 872 P.2d 1320, 1324 (Colo.App.1993) (evidence at issue was corroborative of other properly admitted testimony and, while arguably cumulative, did not tend to confuse or inflame passions of jury).

The judgment is affirmed.

Judge LOEB and Judge HAWTHORNE concur.